**Order Vacated and Opinion filed July 21, 2022.**



In The

# Fourteenth Court of Appeals

NO. 14-22-00176-CV

## IN THE INTEREST OF J.R., A CHILD

**On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause No. 2020-02132J**

## OPINION

Appellant L.L.R. (Mother) appeals the trial court's final order terminating her parental rights and appointing the Department of Family and Protective Services as sole managing conservator of her child J.R. (Jack).[1] The trial court terminated Mother's parental rights after finding that (1) under section 161.001(b)(1)(M) of the Family Code, her parent-child relationship to two other children had been terminated based on grounds of endangerment; and (2) termination was in the child's best

---

[1] Pursuant to Texas Rule of Appellate Procedure 9.8, we use fictitious names to identify the minor and other individuals involved in this case.

interest. *See* Tex. Fam. Code §§ 161.001(b)(1)(M), 161.001(b)(2). In two issues, Mother challenges the trial court's jurisdiction alleging (1) insufficient due diligence was exercised to warrant service on Mother by publication; and (2) the trial court abused its discretion by extending the dismissal date under section 263.401(b) of the Family Code. Concluding the trial court lost jurisdiction under Family Code section 263.401, we vacate the trial court's final order.

## JURISDICTION

In a suit filed by the Department seeking termination of parental rights, a trial court generally loses jurisdiction over the case on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the Department as temporary managing conservator. *See* Tex. Fam. Code § 263.401(a). Unless the trial court has commenced trial on the merits, the case is automatically dismissed on that date. *Id.* § 263.401(a). However, if the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the Department and that continuing the appointment of the Department as temporary managing conservator is in the child's best interest, the trial court may set a new automatic dismissal date that is no more than 180 days after the original dismissal date. *Id.* § 263.401(b).

This case was filed on November 6, 2020, and the Department was appointed temporary managing conservator of the children on November 9, 2020. The original dismissal date was November 15, 2021. *See* Tex. Fam. Code § 263.401 (providing the trial court loses jurisdiction over a parental termination case unless the court has commenced trial on the merits on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the Department as temporary managing conservator). In a subsequent temporary order following an adversary hearing held December 7, 2020, the trial court mistakenly listed the dismissal date

as November 22, 2021.

On November 15, 2021, the Department filed a written motion for continuance requesting additional time to serve all parties. When the Department filed its motion, it mistakenly assumed the dismissal date was November 22, 2021. On November 16, 2021, the day after the actual dismissal date, the trial court held a hearing on the Department's motion. Mother did not appear at the hearing. Mother's attorney objected to the continuance and objected to extending the dismissal deadline on the grounds that the Department had not shown "extenuating circumstances."

The trial court found that extraordinary circumstances existed and that it was in the Child's best interest that he remain in the temporary managing conservatorship of the Department. A new dismissal date for May 21, 2022 was set, and final hearing was set for January 4, 2022. The Department obtained citation by publication on December 8, 2021. The trial court signed a final order terminating Mother's parental rights to the Child on February 22, 2022. The parental rights of Jack's father, who was unknown at the time of the final hearing, were also terminated. This appeal followed.

## ANALYSIS

In two issues Mother challenges the trial court's final order of termination asserting (1) that the Department failed to exercise sufficient due diligence to warrant service on Mother by publication; and (2) the trial court abused its discretion by extending the dismissal date under section 263.401(b) of the Family Code.

The Department candidly admits in its brief that the trial court's order extending the dismissal date was one day late. The trial court lost jurisdiction over this case on November 15, 2021, the day before rendering a written order of

extension. The case, therefore, terminated by operation of law before the trial court signed the final order of termination. *See* Tex. Fam. Code § 263.401(a); *In re J.L.J.*, 645 S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2022, no pet. h.). The Department contends, however, that section 263.401(a) is unconstitutional as applied to the facts of this case because "imposing the statutory dismissal under the circumstances of this case would violate the child's right to due process."

## I.      Statutory Framework

The Family Code sets out a statutory framework for ensuring that termination proceedings are handled in an expedited manner. *See Tex. Dep't of Fam. & Protective Servs. v. Dickensheets*, 274 S.W.3d 150, 158–59 (Tex. App.—Houston [1st Dist.] 2008, no pet.). In 2017, the Legislature amended Family Code section 263.401 to make the dismissal date automatic in cases in which the Department requests termination of the parent-child relationship or requests that the Department be named conservator of the child. As amended, section 263.401(a) provides that if a trial court fails to commence the trial on the merits or grant an extension within one year after the trial court appointed the Department as temporary managing conservator, the trial court's jurisdiction terminates, and the case is automatically dismissed. Tex. Fam. Code § 263.401(a). The statute provides as follows:

> Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b–1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court's jurisdiction over the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child is terminated and the suit is automatically dismissed without a court order. Not later than the 60th day before the day the suit is automatically dismissed, the court shall notify all parties to the suit of the automatic dismissal date.

4

*Id.*

The earlier version of section 263.401(a) included a dismissal deadline, but, under the statute as then written, the deadline was not jurisdictional. *In re Department of Family & Protective Services*, 273 S.W.3d 637, 642 (Tex. 2009) (orig. proceeding); *see* Act of May 28, 1997, 75th Leg., R.S., ch. 600, § 17, 1997 Tex. Gen. Laws 2108, 2112–13. On the contrary, section 263.402 at that time stated that a party who failed to file a timely motion to dismiss the suit waived its right to object if the case was not dismissed. *See* Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 9, 2001 Tex. Gen. Laws 2395, 2396–97 (codified at Tex. Fam. Code § 263.402(b) (repealed 2017)). The Legislature's 2017 amendments changed the consequence of expiration of the statutory deadline (without an extension or commencement of the trial) so that it is now jurisdictional. *See* Act of May 28, 2017, 85th Leg., R.S., ch. 319, § 12, 2017 Tex. Gen. Laws 713, 718–19 (codified at Tex. Fam. Code § 263.401(a)) ("[T]he court's jurisdiction over the suit . . . is terminated and the suit is automatically dismissed without a court order."). The Legislature also deleted the waiver provision in section 263.402(b). *Id.* § 13.

Here, it is undisputed that the trial court rendered a written order appointing the Department temporary managing conservator on November 9, 2020. It is also undisputed that the first Monday after the first anniversary of that date was November 15, 2021. Therefore, unless the trial court either (1) "commenced the trial on the merits," or (2) "granted an extension under Subsection (b) or (b–1)," the court's jurisdiction over the case terminated on November 15, 2021, the suit would be "automatically dismissed without a court order" on that same date, and any orders after that date would be void. *See Dikeman v. Snell*, 490 S.W.2d 183, 186–87 (Tex. 1973) (holding an order entered after the trial court loses jurisdiction is facially void). Finally, it is also undisputed that the trial court did not grant the Department's

5

motion for continuance until November 16, 2021, one day after the court lost jurisdiction.

## II. Section 263.401(a) is not unconstitutional as applied in this case.

The Department contends section 263.401(a) is unconstitutional as applied in this case because it acts to deprive the Child of his due process rights.[2]

### A. Statutory Construction

We strictly construe statutes concerning involuntary termination of parental rights in favor of parents. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Our primary objective in construing a statute, however, is to determine and give effect to the Legislature's intent. *Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex. 1999). In determining the Legislature's intent, we look first to the statute's plain and common meaning and presume that the Legislature intended the plain meaning of its words. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 282 (Tex. 1999). We also presume that the Legislature chose its words carefully, recognizing that every word in a statute was included for some purpose and that every word excluded was omitted for a purpose. *Hogan v. Zoanni*, 627 S.W.3d 163, 175 (Tex. 2021).

We presume the Legislature intended that (1) the statute would comply with the United States and Texas Constitutions, (2) the entire statute would be effective, (3) the result would be "just and reasonable," (4) the result would be feasible of execution, and (5) public interest is favored over any private interest. Tex. Gov't Code § 311.021. Courts may consider many factors in construing a statute, including (1) the object sought to be obtained, and (2) the circumstances under which the

---

[2] As the prevailing party, the Department was not required to raise its constitutional challenge in the trial court to preserve error for appeal. *See In re G.X.H.*, 627 S.W.3d 288, 295 (Tex. 2021) (having prevailed in the trial court the Department did not need to raise every argument supporting the trial court's judgment).

statute was enacted. Tex. Gov't Code § 311.023(1)–(2); *Wal-Mart Stores, Inc. v. Forte*, 497 S.W.3d 460, 466 (Tex. 2016). We do not consider the statute's words and phrases in isolation; rather, "we consider the statute as a whole, giving effect to each provision so that none is rendered meaningless or mere surplusage." *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016).

We review the constitutionality of a statute de novo, *see Stockton v. Offenbach*, 336 S.W.3d 610, 614–15 (Tex. 2011), beginning with the presumption the statute is constitutional. Tex. Gov't Code § 311.021(1); *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex. 1983). In this case, the Department does not make a facial challenge to the statute, but asserts the statute is unconstitutional as applied to the facts of this case.

An as-applied challenge concedes the statute is generally constitutional but claims it operates unconstitutionally as to the challenger because of his or her circumstances. *In re P. RJ E.*, 499 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). We must evaluate the statute as it has been applied against the challenger. *In re G.X.H.*, 584 S.W.3d 543, 550 (Tex. App.—Houston [14th Dist.] 2019), *rev'd on other grounds*, 627 S.W.3d 288 (Tex. 2021). As the scope of such a challenge is necessarily narrow, we do not entertain hypothetical claims or consider the potential impact of the statute on anyone other than the challenger. *Id.*

### B. Application

The Department does not dispute that section 263.401(a) is jurisdictional and provides for automatic dismissal on the Monday following the one-year anniversary of the date the Child was first placed in the temporary conservatorship of the Department. The Department further does not dispute that, in this case, that date was November 15, 2021, one day before the trial court extended the dismissal date, which it mistakenly believed was November 22, 2021. Therefore, the Department concedes

that if we apply section 263.401(a) as written, the trial court automatically lost jurisdiction of this case on November 15, 2021, and any order following that date is void.

The Department argues, however, that section 263.401(a), as applied to this case, violated the Child's right to due process as guaranteed by the State and Federal Constitutions. The United States Constitution prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law. . .." U.S. Const. amend. XIV, § 1. The Texas Constitution states, "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. Because the Department has not suggested otherwise, we presume the due course of law analysis under the Texas Constitution mirrors the due process analysis under the U.S. Constitution. *See Reynoso v. Dibs US, Inc.*, 541 S.W.3d 331, 338 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

A violation of substantive due process occurs when the government deprives individuals of constitutionally protected rights by an arbitrary use of power. *Id.* Procedural due process rules are meant to protect persons from the mistaken or unjustified deprivation of life, liberty, or property. *Id.* at 339 (citing *Carey v. Piphus*, 435 U.S. 247, 260 (1978)). Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995).

In a due process analysis, the Supreme Court of Texas invoked the balancing test laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See In re K.S.L.*, 538 S.W.3d 107, 114 (Tex. 2017). *Mathews* directs courts to balance three factors in determining what procedural safeguards are required by the federal due process clause: (1) the private interest affected by the official action; (2) the risk of erroneous

deprivation of such interest through the procedures used and the probable value, if any, of additional or alternative procedural safeguards; and (3) the government's interests, including the function involved and the fiscal and administrative costs that the additional or substitute procedural requirements would entail. *Mathews*, 424 U.S. at 335. Any procedural due process inquiry remains "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Under the first prong of the balancing test, a court is to consider the nature of the private interest affected by the official action. *Mathews*, 424 U.S. at 335. Parents hold a "fundamental liberty interest" in the care as well as the custody and management of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The Supreme Court of Texas has recognized the natural parental right as "essential," "a basic civil right of man," and "far more precious than property rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). The court further described the private interest of the parents in termination cases as indisputably "a commanding one." *In re K.S.L.*, 538 S.W.3d at 114 (holding that parents and children have an interest in resolving termination proceedings as expeditiously as reasonably possible). This court has also recognized that the private interest of children in termination cases is indisputably a commanding one. *In re G.X.H.*, 584 S.W.3d at 554. Both the required standard of review—clear and convincing—and the high burden of proof suggest the enormity of the liberty interest at stake in termination proceedings.

The State must remain ever vigilant in ensuring procedural fairness in this context, as American culture is based upon a "strong tradition of parental concern for the nurture and upbringing of their children." *Wisconsin v. Yoder*, 406 U.S. 205,

9

232 (1972); *see also Parham v. J. R.*, 442 U.S. 584, 602 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children.")

The Department asserts this factor weighs against the constitutionality of section 263.401(a) because, in this case, Mother "had little interest in her child." To be sure, the record reflects that Jack was Mother's ninth child to be removed[3] and that Mother was not inclined to cooperate with the Department. The Department asserts that Mother's lack of participation in the termination suit, past illegal drug use, and past experience with the Department weigh against imposition of the statutory dismissal in this case. Viewed differently, each of the factors listed by the Department support the statute's recognized purpose of ensuring that termination proceedings are handled in an expedited manner. *See Dickensheets*, 274 S.W.3d at 158–59.

Considering the foregoing, the liberty interest in the parent-child relationship must be recognized as considerable under the first prong of the *Mathews* balancing test.

Under the second prong of the balancing test, a court is to consider not only the risk of an erroneous deprivation of parental rights, but also the potential minimization of that risk with the implementation of additional or alternative procedural safeguards. *Mathews*, 424 U.S. at 335. This prong requires us to balance the interests of the parties against the risk that the loss of jurisdiction pursuant to section 263.401 will lead to erroneous decisions. *See In re G.X.H.*, 584 S.W.3d at 554.

---

[3] Mother's parental rights to her other eight children had been terminated, facilitating their legal adoption.

The Department cites the possibility of the Child's family members "attempting to upset" the Child's foster placement if this court upholds section 263.401(a), confirming that the trial court lost jurisdiction under the statute. While the record reflects the Child has been in a foster-to-adopt placement since shortly after birth, the Department's arguments are speculative. Dismissal under section 263.401(a) is without prejudice and the Department may refile its petition for termination. "The fact that it would have to incur the time and expense of a second termination proceeding does not change the fact that it is entitled to a second bite at the apple—an opportunity not usually available if a deadline is missed." *Id.*

Considering the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or alternative procedural safeguards, the second *Mathews* prong weighs against a finding of unconstitutionality in this case.

The third prong of the balancing test focuses on the government's dual interests—an administrative interest in reducing costs associated with termination proceedings and an interest in ensuring an expeditious yet accurate resolution to protect the child's welfare. *See Mathews*, 424 U.S. at 335. The psychological effects of prolonged termination proceedings on a child are of such a nature and magnitude that time is indeed of the essence. A timely proceeding would better serve the welfare of the child by ensuring permanency and stability. Delay would not only hinder the Department's interest in promoting the child's welfare, but also would increase the costs with each additional proceeding.

In applying this factor to this case, the Department cites the Legislature's intent in enacting section 263.401(a), which "was to '[m]inimize trauma' to the child and to place the child 'in a permanent family as quickly as possible.'" *Dickensheets*, 274 S.W.3d at 159. The Department argues that imposition of the jurisdictional

11

deadline in this case would have the opposite effect, unnecessarily prolonging the date on which the child may be permanently adopted. We note, however, that, in this case, it is not the statute that unnecessarily prolonged the proceedings, but the combined effect of the Department's failure to obtain service on Mother within a year from appointment as temporary conservator and the parties' and trial court's mistake in calculating the deadline.

Consideration of the three *Mathews v. Eldridge* factors suggests that application of the jurisdictional standard in section 263.401(a) of the Family Code does not violate the due process protections afforded the Child under the state and federal Constitutions. We therefore conclude the Department has not shown section 263.401(a) violates due process as applied in this case.

## CONCLUSION

Because the trial was not commenced on or before November 15, 2021, section 263.401(a) operated to deprive the trial court of jurisdiction to render the final termination order. The case, therefore, terminated by operation of law before the trial court rendered the termination order. *See* Tex. Fam. Code § 263.401(a). We accordingly vacate the termination order pursuant to Family Code section 263.401(a). *See In re J.L.J.*, 645 S.W.3d at 299.

/s/     Jerry Zimmerer
        Justice

Panel consists of Justices Zimmerer, Spain, and Poissant.

12